

ABRAHAM, FRUCHTER & TWERSKY, LLP

September 20, 2019

<u>VIA ECF</u>

Hon. Joan M. Azrack
United States District Court
Eastern District of New York
Long Island Courthouse
100 Federal Plaza
Central Islip, NY 11722

Re:    *Garfield v. Nathan's Famous, Inc.*, Civil Action No. 2:19-cv-04411-JMA-AYS

Dear Judge Azrack:

Plaintiff Robert Garfield, in response to this Court's September 16, 2019 Order (ECF No. 14) respectfully submits this supplemental letter addressing his entitlement to attorneys' fees and the impact, if any of *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598 (2001) ("*Buckhannon*"), on any such award of attorneys' fees.

**Summary of Relevant Facts and Proceedings**

On July 26, 2019, Nathan's Famous, Inc. (the "Company") filed a proxy statement (the "Proxy") with the Securities and Exchange Commission ("SEC") and disseminated the Proxy to its stockholders as required by Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78n(a). The Proxy was deficient because it failed to make disclosures required by Items 10(a)(1) and 10(b)(2)(i) of Schedule 14A (17 C.F.R. §240.14a-101) regarding a proposal with respect to a compensation plan requiring stockholder approval.

On July 31, 2019, Plaintiff filed his Complaint seeking injunctive relief to cure the Proxy's deficiencies. Plaintiff promptly effectuated service and requested a pre-motion conference in anticipation of an expedited motion for summary judgment. ECF Nos. 5-6. On August 14, 2019, as Plaintiff was finalizing his summary judgment motion papers, the Company filed with the SEC Definitive Additional Materials (the "Supplement"), and mailed them to its stockholders, curing the Proxy's disclosure failures. *See* ECF No. 11.

**Second Circuit Law Entitles Plaintiff to an Award of Attorneys' Fees Based Upon the Benefit Conferred by His Actions**

Plaintiff's Complaint and pre-motion letter are a substantial – if not the sole – reason the Company's cured its Exchange Act violations by filing the Supplement.[1] This created a common

---

[1] Any argument to the contrary would strain credulity. The Supplement directly mirrors Plaintiff's claims, as the Company acknowledged. *See* ECF No. 10 at 1.

NEW YORK   tel: 212.279.5050   fax: 212.279.3655        CALIFORNIA   tel: 858.764.2580   fax: 858.764.2582        aftlaw.com
One Penn Plaza, Suite 2805, New York, NY 10119        11622 El Camino Real, Suite 100, San Diego, CA 92130



benefit by, *inter alia*, allowing stockholders "to cast an informed vote," and that "in and of itself, is a substantial interest worthy of vindication." *Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores*, 54 F.3d 69, 71 (2d Cir. 1995) ("*Amalgamated Clothing*").

The common benefit Plaintiff created constitutes a common fund for purposes of an award of attorneys' fees under controlling principles of Second Circuit law. *See, e.g.*, *Savoie v. Merchants Bank*, 84 F.3d 52, 56-57 & n.3 (2d Cir. 1996) (the "'common fund doctrine' [is used] somewhat broadly so as to incorporate the 'common benefit' doctrine[.]") (citing *Amalgamated Clothing*, 54 F.3d at 71). The common fund doctrine allows "[a] party recovering a fund for the benefit of others, in addition to himself, may recover his costs, including his attorney's fees, from the fund itself or directly from the other parties enjoying the benefit." *Savoie*, 84 F.3d at 56. The doctrine contemplates "that non-monetary benefits, such as promoting fair and informed corporate suffrage .... may support a fee award." *Koppel v. Wien*, 743 F.2d 129, 134-35 (2d Cir. 1984) (internal citations omitted). An award of attorneys' fees and expenses is justified, because, in addition to vindicating the statutory policy of the Exchange Act, the Company and its shareholders "benefited from [Plaintiff]'s action[.]" *Kopet v. Esquire Realty Co.*, 523 F.2d 1005, 1008 (2d Cir. 1975).

*Mills v. Electric Auto-Lite,* 396 U.S. 375, 393-94 (1970), is also on point in holding that causing a proxy statement to comply with Section 14(a) benefits all of a company's stockholders, entitling a plaintiff to an award of attorneys' fees and costs. 396 U.S. at 392 ("To allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense."). *Mills* recognized that "it may be impossible to assign monetary value to the benefit" but "the stress placed by Congress on the importance of fair and informed corporate suffrage leads to the conclusion that, in vindicating the statutory policy, petitioners have rendered a substantial service to the corporation and its shareholders[,]" entitling them to recover attorneys' fees and costs. *Id.* at 396.

Here, an award of attorneys' fees is appropriate because the "SEC requires disclosure" of information in Schedule 14A means that the omission of that information "is almost certain to be actionable" under Section 14(a). *See Nexpoint Advisors, L.P. v. TICC Capital Corp.,* No. 3:15-CV-1465 (CSH), 2015 WL 6408117, at *11 (D. Conn. Oct. 23, 2015); *see also Resnik v. Swartz*, 303 F.3d 147, 151 (2d Cir. 2002) (Amon, J.) (omitting information from a proxy statement violates Section 14(a) if "SEC regulations specifically require disclosure of the omitted information in a proxy statement[.]") Including information about compensation plan proposals elsewhere in the public record is insufficient. As explained by the SEC, doing so "would misplace the disclosure in those cases when the information would be useful to investors in assessing the merits of a compensation plan submitted for security holder action." *In re Disclosure of Equity Compensation Plan Information*, S.E.C. Release No. 8048, 2001 WL 1646708, at *7 (2001). The SEC has reiterated "[a]ny action on a compensation plan that must be submitted for security holder approval requires ***all of the disclosure called for under Item 10*** of Schedule 14A." *SEC Compliance and Disclosure Interpretations*, Question 161.01, 2018 WL 3420521 (revised May 11, 2018) (emphasis added). Plaintiff caused such disclosures to be made here.

Two recent cases from this District further demonstrate that the Company violated the Exchange Act and that paying attorneys' fees for the benefit received is appropriate. Now-Chief Judge Irizarry concluded that soliciting shareholder proxies to allow the issuance of a large number

of shares to an unknown number of persons is "an important, important proposal," and it is a "material omission" to omit information required by Item 10 of Schedule 14A. Transcript of Oral Argument, *Stein v. Raymond James Financial, Inc.*, No. 16-cv-379-DLI (E.D.N.Y), at 6:25-7:3 & 12:2-4 (Feb. 9, 2016).[2] That hearing occurred fifteen days after the case was filed, and the Court so-ordered a dismissal stipulation three days later, leaving the parties to negotiate attorneys' fees or move the Court, if necessary. Case No. 1:16-cv-00379-DLI-JO, ECF No. 15 at 3. Similarly, Judge Weinstein concluded that "a clear violation [of securities laws]" was pled in a similar action. Transcript of Oral Argument, *Stein v. Medtronic plc*, 17-CV-5343 (JBW), at 5:14-18 (Oct. 11, 2017). As here, Defendants moved to dismiss on mootness grounds, and plaintiff's counsel explained that the only outstanding issue was attorneys' fees. The Court requested the parties attempt to negotiate a fee. The Court later endorsed a stipulated judgment of $200,000 for plaintiffs' attorneys' fees, costs, and expenses. Case 1:17-cv-05372-JBW-LB, ECF No. 7.

### *Buckhannon* is Not on Point and Does Not Limit Plaintiff's Entitlement to Attorneys' Fees

*Buckhannon*, construing the contours of the statutory term "prevailing party" in attorney fees provisions of the Fair Housing and Americans with Disabilities Acts, held that a plaintiff cannot become a "prevailing party," eligible for a statutory award of attorney fees, absent a court order (or a written settlement) changing the legal relationships among the parties. *Id.* at 601, 605. *Buckhannon* has only been applied to similarly worded "prevailing party" statutes. *See, e.g., Union of Needletrades, Indus. & Textile Employees, AFL-CIO, CLC v. U.S. I.N.S.*, 336 F.3d 200, 205 (2d Cir. 2003). However, courts have declined to extend *Buckhannon* to cases, such as the one at Bar, where the award of attorneys' fees is not based upon a "prevailing party" fee shifting statute.

*Hardt v. Reliance Stand. Life Ins. Co.*, 560 U.S. 242 (2010), decided nine years after *Buckhannon*, is on point. *Hardt* recognized that of the "***statutory deviations*** from the American Rule" the Supreme Court had "most often considered statutes containing an express 'prevailing party'" requirement, but that those precedents do not apply to ERISA's statutory availability of fee awards because ERISA contains no such prevailing party limitation. *Id.* at 252-53 (emphasis added). Similarly, notwithstanding *Buckhannon*, a catalyst theory for attorneys' fees applies under the Clean Air Act, *Sierra Club v. E.P.A.*, 322 F.3d 718, 726 (D.C. Cir. 2003), and the Endangered Species Act, *Loggerhead Turtle v. County Council of Volusia County*, Fla., 307 F.3d 1318, 1325 (11th Cir. 2002), because those statutes provide for attorneys' fees "whenever . . . appropriate." Indeed, the Second Circuit recognized that "the Supreme Court's narrowing of the [prevailing party] theory in *Buckhannon* was within the context of statutes imposing the stricter prevailing party standard." *Scarangella v. Grp. Health, Inc.*, 731 F.3d 146, 154 (2d Cir. 2013). *Warren v. Colvin*, 744 F.3d 841 (2d Cir. 2014), also on point, explained that Congress amended FOIA to abrogate *Buckhannon* by changing its requirement for attorneys' fees to having "substantially prevailed" in lieu of the "prevailing party" language construed by *Buckhannon*. *Id.* at 845.

The Second Circuit has, post-*Buckhannon*, reiterated that attorneys' fees are recoverable where a litigant confers a substantial benefit upon an ascertainable class of persons. *Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 362 F. App'x 212, 217 (2d Cir. 2010)

---

[2] Plaintiff will electronically file these transcripts, or otherwise provide them, upon request of the Court or Defendant's counsel.

(quoting *Mills,* 396 U.S. at 393-94). *Ramey* conclusively demonstrates that *Mills* is still good law. Indeed, previously, in *Ramey*, post-*Buckhannon*, this Court recognized "attorney's fees may be awarded where 'the plaintiff's successful litigation confers a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionally among them.'" *Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 2005 WL 8157424, at \*2 (E.D.N.Y. Feb. 25, 2005). Rationales for the common benefit theory still include that a plaintiff "conferred a substantial benefit" on an ascertainable class and deterred unlawful conduct. *Id.* at \*2-4.

It would be an error to apply *Buckhannon*, or a prevailing party standard, here. Neither the Exchange Act nor the common fund doctrine contain a "prevailing party" provision. Attorneys' fees are available here because Plaintiff's efforts "provide[d] a necessary supplement to [SEC] action[,]" which is why the Supreme Court recognized a private right of action under Section 14(a). *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964) (noting that the SEC examines thousands of "proxy statements annually and each of them must necessarily be expedited. Time does not permit an independent examination of the facts set out in the proxy material."). *Borak* instructed lower courts to "be alert to provide such remedies as are necessary to make effective the congressional purpose" of fair corporate suffrage. *Id.* at 433. To the extent it was unclear whether such remedies included attorneys' fees, the question was affirmatively answered in *Mills v. Electric Auto-Lite*, requiring that a plaintiff who causes a proxy statement to be corrected to comply with the Exchange Act is entitled to reimbursement of attorneys' fees and expenses. 396 U.S. at 389-90.

## The Proper Measure of Attorneys' Fees

To the extent the Court deems it is relevant to Plaintiff's request, Plaintiff informs the Court that his counsel's lodestar, when his claims were mooted, was $35,917.50 and his counsel's lodestar now exceeds $60,000, having responded to Defendants' pre-motion correspondence and prepared for and participated in a court hearing. This lodestar included legal and factual research, analyzing publicly available information relating to the Company's compensation plans, drafting and filing the complaint, pre-motion correspondence, substantially drafting summary judgment papers, and researching and responding to Defendant's pre-motion correspondence. Plaintiff's counsel also incurred expenses exceeding $800, which includes filing fees, service and Federal Express deliveries.

"When applying the lodestar method, courts generally 'apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved.'" *Pucciarelli v. Lakeview Cars, Inc.*, 2017 WL 2778029, at \*2 (E.D.N.Y. June 26, 2017). These factors weigh in favor of an increased lodestar. Success was not assured, and there was (and continues to be) a risk of non-payment of fees. On the other hand, Plaintiff achieved complete success by curing a violation of the Exchange Act based upon an expedited schedule necessitated by the scheduling of the underlying events and prevented the issuance of unauthorized shares by the Company, which could have been complicated to correct. Plaintiff thus requests the Court award him $60,000 in attorneys' fees and expenses representing a modest multiple of approximately 1.67 times lodestar at the time of the Supplement, and an amount equal to lodestar when taking into account subsequent related proceedings. *See Pucciarelli v. Lakeview*

*Cars, Inc.,* 2017 WL 2778029, at \*2 (E.D.N.Y. June 26, 2017) (holding that a "1.31 multiplier of the loadstar" was "well below the multipliers found reasonable in the Second Circuit.").

The Company is incorporated under the laws of the State of Delaware with the courts of that State recognized as having unique expertise in matters related to corporate law and related disclosures. *E.g.*, *Mgmt. Techs., Inc. v. Morris*, 961 F. Supp. 640, 646 n.8 (S.D.N.Y. 1997) (recognizing that Delaware "may have the most fully developed body of corporate governance law of any of the states" and looking to it by analogy). In cataloguing "contested fee awards in disclosure-only cases" the Delaware Court of Chancery has held that even a "minimally beneficial" disclosure justifies an award of $75,000, which exceeds Plaintiff's request. *In re Sauer-Danfoss Inc. S'holders Litig.*, 65 A.3d 1116, 1136-38, 1141 (Del. Ch. 2011). The Supplement created more than a "minimally beneficial" disclosure, it was a substantial benefit, having cured an Exchange Act violation as held by the controlling *Mills*, *Kopet*, *Koppel*, and *Amalgamated Clothing* decisions. Accordingly, the award of $60,000 in attorneys' fees being sought by Plaintiff is further justified here.

There were only fifty-four days between the Proxy's issuance and the scheduled vote, making it necessary to retain counsel with specialized knowledge, and for that counsel to act quickly to ensure the relief sought would be received. That decision proved reasonable, because the Company's counsel questioned the materiality of the Supplement at the Court hearing on September 16, 2019. Defendant's counsel first became known to Plaintiff's counsel minutes after the Supplement issued. At that time, Plaintiff had thirty-five days to cause an informed vote that complied with the Exchange Act. Plaintiff's counsel could not wait, and hope, the Company would cure its Exchange Act violation. Expedited litigation, and preparation to prosecute Plaintiff's claims, was necessary.

Plaintiff's counsel worked diligently and efficiently to cause the desired, and valuable, Supplement to issue. Plaintiff's counsel should not be penalized for efficiently prosecuting this contingent case. The Second Circuit has expressly rewarded counsel for efficiently prosecuting cases, particularly considering the "contingent risk of litigation." As stated in the seminal case of *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974): "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success."

For the foregoing reasons, Plaintiff is entitled to, and respectfully requests, fair and reasonable attorneys' fees in connection with his causing the Company to issue the Supplement in the amount of $60,000.

Respectfully Submitted,

Michael J. Klein

cc:     All Counsel of Record (via ECF)